IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| DAVID M. SWINTON, on behalf of himself and all others similarly situated, | ) ) | Case No. 4:18-cv-00144-SMR-SBJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SQUARETRADE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court are Plaintiff David Swinton's Motion to Certify Class, [ECF No. 97], and

Motion for Attorney's Fees and Incentive Payment, [ECF No. 90]. A fairness hearing was held

on June 21, 2019. The Court finds that it needs additional information and analysis from the

parties, as set out in the sections that follow, before the motions can be decided.

## I.  DISTRIBUTION OF RELIEF TO THE CLASS

When evaluating the adequacy of the remedy in a class action settlement, Federal Rule of

Civil Procedure 23(e)(2)(C)(ii) requires the Court to consider "the effectiveness of any proposed

method of distributing relief to the class, including the method of processing class-member

claims." Two issues have come to light in this regard that must be addressed.

Two forms of relief will be distributed to the class: (1) cash payments to class members

whose Protection Plan[1] claims were denied due to the Channel Restriction ("Refund Class

Members"); and (2) a $10 coupon that can be applied to a Protection Plan for a mobile phone

("Settlement Coupon"). All class members will receive a Settlement Coupon. The third-party

---

[1] Capitalized terms not defined herein have the same meanings as in the Court's Order Preliminarily Approving the Class Action Settlement, [ECF No. 73].

settlement administrator (the "Administrator") sent notice of the Proposed Settlement to the putative class via email. The Administrator sent notice to roughly 16.8 million email addresses, which Defendant SquareTrade, Inc. ("SquareTrade") provided to the Administrator based on Defendant's business records.

After the settlement becomes final, the Administrator will send to all class members an email containing a Settlement Coupon. Defendant will provide the Administrator with a list of Refund Class Members, which Defendant identified from its business records. The Administrator will take various steps to confirm the mailing addresses of the Refund Class Members and mail them a check in the amount of the relief to which they are entitled under the settlement.

The Administrator has stated that, of the roughly 16.8 million email addresses to which notice was sent, it was *delivered* to only 15.7 million email addresses. [ECF No. 97-2 ¶¶ 4, 6]. If these are the same email addresses to which the Settlement Coupons will be sent, the 1.1 million class members to whom notice could not be delivered will receive no coupon.[2] If this is the case, the parties must confirm this and address two issues: (1) how does this impact the Court's analysis of the effectiveness of the method for distributing relief; and (2) more broadly, how does not receiving a Settlement Coupon impact the fairness, reasonableness, and adequacy of the settlement for these 1.1 million class members?

---

[2] This issue does not directly impact payments to the Refund Class Members, as the Administrator is required to confirm their respective mailing addresses, amongst other means, via the National Change of Address Database. *See* [ECF No. 73 at 8].

The second issue concerns objector David Florenzano.[3]   At the fairness hearing Defendant's counsel was asked if Florenzano has been identified as a Refund Class Member. Defendant's counsel was unable to confirm that he has been.  Defendant's counsel explained that he discussed in detail with Plaintiff during the settlement negotiations the methodology by which SquareTrade identified Refund Class Members from its business records.  Prior filings in this case indicate that Defendant has identified roughly 580 such individuals.  [ECF No. 69 ¶ 12].  In this regard, the Court would like two things: (1) confirmation as to whether Florenzano was included in the 580 individuals identified as Refund Class Members; and (2) a description of the methodology used to identify the Refund Class Members, in the same detail Defendant provided Plaintiff during settlement negotiations.  Because these are factual representations, they should be supported by, at least, sworn declarations.

## II.    VALUE OF COUPONS AND STATE-LAW CLAIMS

Rule 23(e)(2)(C)(i) requires the Court to evaluate the relief provided in the settlement against "the costs, risks, and delay of trial and appeal."  This is similar to (and, in the Court's view, incorporates) two factors that Eighth Circuit courts have traditionally used when evaluating the fairness, reasonableness, and adequacy of class action settlements, namely: (1) "the merits of the plaintiff's case, weighed against the terms of the settlement"; and (2) "the complexity and expense of further litigation." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988).

Also, under the Class Action Fairness Act ("CAFA"), "[i]n a proposed settlement under which class members would be awarded coupons, the court may approve the proposed settlement

---

[3] The details of Florenzano's objections, which are not relevant to this Order, can be found at ECF No. 99.

only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members." 28 U.S.C. § 1712(e). Although the "fair, reasonable, and adequate" standard mirrors that set out in Rule 23(e) for the approval of class action settlements generally, *see* Fed. R. Civ. P. 23(e)(2), courts have interpreted CAFA as "requir[ing] more 'heightened judicial scrutiny of coupon-based settlements' than settlements resulting in cash payments." *Galloway v. Kan. City Landsmen, LLC*, No. 4:11-1020-CV-W-DGK, 2013 WL 3336636, at *2 (W.D. Mo. July 2, 2013) (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006)).

CAFA's legislative history provides that, in applying this scrutiny, "the judge should consider, among other things, the real monetary value and likely utilization rate of the coupons provided by the settlement." S. Rep. No. 109-14, at 31 (2005). Accordingly, district courts have required this information when a proposed settlement includes coupon payments. *See Galloway*, 2013 WL 3336636, at *6; *Hofmann v. Dutch LLC*, 317 F.R.D. 566, 576 (S.D. Cal 2016); *True v. Am. Honda Co.*, 749 F. Supp. 2d 1052, 1073 (C.D. Cal. 2010). "Some factors a court weighs to determine the value of the coupon are the amount of the discount, transferability of the coupon, class member usage rate, and the value of the coupon to the defendant." *Hofmann*, 317 F.R.D. at 576. "The face value of a coupon cannot be used to establish its monetary value because the monetary value of a coupon is always less than its face value." *Galloway*, 2013 WL 3336636, at *6 (citing *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001)). "Courts reject coupons whose face value is far less than its actual value." *Hofmann*, 317 F.R.D. at 576.

The parties have not provided evidence of the real monetary value of the Settlement Coupons; nor have they offered anything but speculation about the coupons' potential

redemption rate. At the fairness hearing, Defendant's counsel admitted that Defendant does not have an estimate of how many class members will redeem the coupon and did not consider the redemption rate when including the coupon as part of the settlement. Plaintiff's counsel asked the Court to assume that anyone who did not object to or opt out of the settlement (all but roughly 4,000 class members) will redeem the coupon. The Court is aware of no case in which a court has made such an assumption, and it is inappropriate to do so here. It is improbable that roughly seventeen million people are going to redeem the coupon. Certainly SquareTrade would welcome that result—it would pay roughly $360,000 to Refund Class Members,[4] and generate between $1.343 billion and $2.363 billion in mobile phone Protection Plan sales in the settlement.[5]

This information is necessary because for all but .0034% of the class,[6] the only compensation—aside from various injunctive relief—will be the Settlement Coupon, which the Court presently cannot value. Additionally, the Court must "explicitly determine whether the value of the 'coupon settlement is reasonable in relation to the value of the claims surrendered.'" *Galloway*, 2013 WL 3336636, at *6 (quoting *Sobel v. Hertz Corp.*, No. 3:06-CV-0545-LRH-RAM, 2011 WL 2559565, at *10 (D. Nev. June 27, 2011)). Even with information as to the value of the Settlement Coupons, the Court could not make that determination

---

[4] Defendant has stated that there are roughly 580 Refund Class Members and the average price of the goods underlying their Protection Plans was $620. [ECF No. 69 ¶ 12]. The product of those two figures is $359,600.

[5] The Settlement Coupon will allow class members to purchase a one-year or two-year Protection Plan for $79 or $139, respectively, after the coupon is applied. [ECF No. 103-2 ¶ 5]. The billion-dollar figures above are those prices multiplied by seventeen million.

[6] $(580 \div 17,000,000) \times 100$.

-5-

because the parties have not adequately addressed the claims that non-Refund Class Members will give up as part of the settlement.  Relevantly, objectors have pointed out that those claims include state consumer fraud claims.  The parties argue, however, that most state consumer fraud statutes require that a plaintiff establish injury—in some cases monetary injury—and here most class members have no actual damages because they have not had a Protection Plan claim denied.

But, as the parties imply, some state consumer fraud statutes include statutory damages that may be awarded even when the plaintiff suffers no ascertainable loss.  *See, e.g.*, *Clayton v. McCary*, 426 F. Supp. 248, 262 (N.D. Ohio, 1976) (awarding statutory damages under Ohio's Consumer Sales Practices Act where the plaintiff was found to have suffered no actual damages); *Snyder v. Watkins*, 2008 WL 4376830, at *2 (Ohio Ct. App. Sept. 23, 2008) (unpublished) (same).  Class members may also have viable claims under other permutations of state consumer fraud statutes.  *See Orlander v. Staples, Inc.*, 802 F.3d 289, 301 (2d Cir. 2015) (finding that the injury requirement under New York's consumer fraud statute was satisfied where the plaintiff's injury consisted of "payment for a two-year . . . Protection Plan which he would not have purchased had he known that Defendant intended to decline to provide him any services in the first year of the Contract"); *Peabody v. P.J.'s Auto Village, Inc.*, 569 A.2d 460, 463 (Vt. 1989) (finding that actual damages is not an element of a claim under Vermont's consumer fraud statute); Bob Cohen, *Right to Private Action Under State Consumer Protection Act—Preconditions to Action*, 117 A.L.R.5th 155, § 4[b] (2004) (listing Hawaii, Minnesota, and Washington as states where nominal damages are sufficient to meet the damages, harm, or loss requirement in their consumer fraud statutes).

Under some of these statutes it may not be necessary to show an overt loss, such as that which occurs when a Protection Plan claim is wrongfully denied. It may be enough to show—as Plaintiff alleged but has now abandoned—that "[a]ll class members were injured by reason of Defendant's subject disclosure violations, in that their Protection Plans were worth ascertainably less as enforced than as disclosed before and at the time of sale." [ECF No. 1-1 at 21]. Like the plaintiff in *Orlander*, class members may also be able to show actionable injuries by showing that they would not have purchased their Protection Plans had they been properly made aware of the plans' restrictions. To date, the parties have been too quick to dismiss these claims, and the Court believes they warrant greater consideration.

Thus, in addition to the items requested in the previous section of this Order, the Court would like the parties to file written submissions addressing the following: (1) the real monetary value of the Settlement Coupons and their likely redemption/utilization rate; and (2) the value of the state law claims, relative to the costs, risks, and delays of trial and appeal. As to the Settlement Coupons, if the parties wish to submit a declaration from an expert, they are encouraged to do so. If the parties want the Court to receive expert testimony per 28 U.S.C. § 1712(d), they should first file a motion to that end. Having heard the parties' arguments thus far on this issue, the Court believes that data and other objective evidence is likely to be most helpful. As to the state-law claims, the Court notes that, although the Court is primarily concerned with determining the strength of those claims, the ultimate inquiry under Rule 23(e) is a relative one. Consistent with the requirements of Rule 23(e) and Eighth Circuit precedent, the parties should address the strength of the state-law claims relative to the risks inherent in litigating them. Of course, a key aspect of

that risk is the competing rewards in litigating versus settlement. Where there is less to lose—i.e., where the Settlement Coupon is of little value—there is less risk to litigating.[7]

### III. CONCLUSION

For the foregoing reasons, the Court will take under advisement Plaintiff's Motion to Certify Class, [ECF No. 97], and Motion for Attorney's Fees and Incentive Award, [ECF No. 90]. The parties should submit the materials requested in this Order by no later than August 21, 2019. The parties may submit one or, if they wish to divide the issues amongst themselves, separate briefs. The page limit in Local Rule 7(h) is waived for these submissions.

IT IS SO ORDERED.

Dated this 22nd day of July, 2019.

_____
STEPHANIE M. ROSE, JUDGE
UNITED STATES DISTRICT COURT

---

[7] On the issue of litigation risk, it is worth noting that the consumer fraud laws of Iowa and forty-five other states award attorney's fees to prevailing plaintiffs. *See* Iowa Code § 714H.5(2); Debra Pogrund Stark & Jessica M. Choplin, *Does Fraud Pay? An Empirical Analysis of Attorney's Fees Provisions in Consumer Fraud Statutes*, 56 Clev. St. L. Rev. 483, 497 (2008) (noting that, as of 2008, the consumer fraud laws of forty-five states "provide for the awarding of attorney's fees to a prevailing plaintiff, either as a mandate to the court or at the discretion of the court").